## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**MARIA GAZARD,**

              **Plaintiff,**

**-vs-**                                               **Case No. 6:07-cv-1535-Orl-18DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

              **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for disability insurance benefits and a period of disability under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED.**

## I.  BACKGROUND

### A.  Procedural History

Plaintiff filed for a period of disability and disability insurance benefits on August 24, 2001. R. 49-51. She alleged an onset of disability on May 18, 2001, due to back, neck, and shoulder

injuries/pain, diabetes, and headaches. R. 49, 58, 422-23. Her application was denied initially and upon reconsideration. R. 29-32. Plaintiff requested a hearing, which was originally held on July 30, 2003, before Administrative Law Judge Philamena Jones (hereinafter referred to as "ALJ"). R. 38; 219-67. The ALJ initially found Plaintiff not disabled in a decision dated August 19, 2003. R. 14-20. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on December 8, 2003. R. 4-9. Plaintiff filed an action for judicial review; the ALJ's decision was subsequently reversed and remanded on February 23, 2005 for failing to adequately support the credibility decision without explanation of why the ALJ rejected other findings that undermined her decision and for failing to articulate adequate reasons to support her determination that Plaintiff's testimony about her functional limitations arising from pain and other subjective symptoms was not entirely credible. *See* Case No. 6:04-cv-150-22KRS; R. 293, 298-99.

Following a second hearing on November 1, 2005, the ALJ issued a second unfavorable decision on January 20, 2006, again denying Plaintiff's application (the "Decision"). R. 267O-67R. A second request for review was denied by the Appeals Council on July 30, 2007. R. 267A. Plaintiff filed this action for judicial review on September 26, 2007. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff was born on December 5, 1952. R. 49. Plaintiff has a ninth grade education, and has previously been employed as a housekeeper, crossing guard, and telemarketer. R. 15. Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of back, neck, and shoulder injuries sustained when she slipped and fell on her back at a K-Mart store on May 17, 2001. R. 58, 102. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from cervical/lumbar degenerative disc disease, obesity, and type

II diabetes mellitus with intermittent control and history of noncompliance which were "severe" medically determinable impairments, but did not have an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 267N. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, as she could frequently or occasionally lift/carry up to ten pounds, stand/walk two hours of an eight-hour workday, sit for about six hours per day, sit for about six hours per day, and occasionally reach overhead, climb, balance, stoop, kneel, crouch, or crawl. R. 267P. In making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were exaggerated and disproportionate to the diagnostic and clinical findings for the reasons set forth in the body of the decision. R. 267O. Based upon Plaintiff's RFC, the ALJ determined that she could perform past relevant work as a telephone solicitor both as previously performed and generally performed in the national economy. R. 267P. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 267Q, Finding No. 9.

Plaintiff now asserts four points of error. First, she argues that the ALJ erred in evaluating her credibility. Second, she claims the ALJ erred in asking the VE a hypothetical question that was incomplete. Third, she asserts that the ALJ erred by improperly assessing the opinion of Plaintiff's chiropractor. Fourth, Plaintiff contends the ALJ erred by failing to state how the conflict between the VE's testimony and the DOT was resolved. For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED and REMANDED**.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not

have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Plaintiff could perform her past relevant work; therefore, the ALJ found Plaintiff not disabled before reaching step five.

## III. ANALYSIS

### A. Residual Functional Capacity and Credibility Determination

Plaintiff claims that the ALJ should not have discounted her testimony concerning her subjective complaints of functional limitations due to headaches, blurry vision, and dizziness, which were supported the medical records. Plaintiff specifically challenges the ALJ's determination that Plaintiff's testimony at the supplemental hearing on November 1, 2005 was "exaggerated and disproportionate to the diagnostic and clinical findings." R. 267O. Plaintiff contends that although Plaintiff's claim has been pending since August 2001, the ALJ omitted reference to some long-standing medical evidence that supports Plaintiff's claim. The Commissioner contends that the ALJ properly analyzed the medical evidence to draw conclusions about Plaintiff's credibility.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given

to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff challenges the ALJ's determination that Plaintiff's testimony at the supplemental hearing on November 11, 2005 was "exaggerated and disproportionate to the diagnostic and clinical findings." R. 267O. When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Following citation to the applicable regulations and SSA rulings that govern determinations concerning pain, the ALJ stated:

> Considering the claimant's testimony at both hearings and that of her husband at the second supplemental hearing versus the evidence in the record, the undersigned finds that testimony exaggerated and disproportionate to the diagnostic and clinical findings. The claimant alleged that she is unable to tolerate prolonged sitting or standing and that she cannot lift a gallon of milk. She and her attorney both asserted that she drops things, but Dr. Ranganathan found that she demonstrated 5/5 grip strength and normal

> gross and fine manipulation. As mentioned above, Dr. Farrar's assertion of right upper and left lower extremity neuropathy is not supported by EMG studies and Dr. Ranganathan's examination found 5/5 motor strength in three extremities and 4/5 motor strength in the right lower extremity. The claimant alleged back and neck pain because of herniated discs, but a straight leg raising test by Dr. Ranganathan was negative. Further, he found that she walks with a normal gait and she is able to tandem, heel, and toe walk without difficult. Although the claimant alleges shoulder pain and that her rotator cuff "snapped," there is no diagnostic evidence of a rotator cuff tear in the record and Dr. Ranganathan noted that she had "no shoulder pain or tenderness." The claimant alleged having blackouts, dizzy spells, and blurred vision. *There is no indication of blackouts or blurred vision in the record.* The claimant complained of "occasional headaches" to Dr. Ranganathan. Some of the ER treatment records throughout the period at issue also refer to complaints [of] dizziness and headaches. However, the claimant testified that she gets migraine headaches "everyday." The medical evidence of record simply does not support the frequency of headaches which she alleges. This further undermines her credibility. The claimant alleged that she has been told to have an operation, but Dr. Farrar indicated that she should be treated conservatively. Thus, when considering the definitive laboratory and clinical findings, the claimant's subjective complaints are beyond what would reasonably be expected in terms of intensity, duration, or frequency.

R. 267O (emphasis added).

Plaintiff argues that the ALJ ignored medical evidence concerning Plaintiff experiencing blackouts, dizzy spells, and blurred vision in finding that there was no indication of them in the record. R. 267O. In the course of discussing Plaintiff's medical records, the ALJ noted:

> The claimant has also sought emergency room treatment for neck and back pain on December 1, 2001, September 26, 2002, and three times in May 2003. She also complained of general weakness and on May 21, 2003, she also complained of left arm weakness.
>
> The claimant again sought ER treatment on November 11, 2003 with complaints of chest pain and headaches. Electrocardiograph results were negative. She was released the next day. Secondary diagnosis included suspected migraine. . . . On January 3, 2004 she was treated at the ER for symptoms of chest and back pain which was worse with coughing. She was released with a diagnosis of acute bronchitis and prescribed medication and an Albuterol inhaler. She presented on January 14, 2004 with symptoms of chest pain NOS. The principal diagnosis on discharge was again acute bronchitis. .. . On June 16, 2004 the claimant presented at the ER with complaints of severe back pain and leg weakness for 1 day; and headaches for 1 week. The principal diagnosis was lumbosacral sprain. . . . On April 8, 2005 the claimant was treated for

> complaint of headache and backache. . . . On July 18, 2005, the claimant presented with complaints of back pain, neck pain, and weakness in all extremities for 2 days. Diabetic neuropathy was the principal diagnosis and the claimant was referred to a "free clinic" for follow-up care.

R. 267N (citing R 114-132, 169-213).

Plaintiff also argues that the ALJ failed to analyze or mention any of the medical evidence submitted after the date of the first evidentiary hearing (July 2003). Doc. No. 16. The ALJ did describe the treatment records in the medical history section of the Decision, but failed to analyze or discount these records in relation to Plaintiff's credibility.

Plaintiff points to records from the South Seminole Hospital Emergency Room ("ER") which contain a number of Plaintiff's complaints about blurred vision and dizziness. On September 26, 2002 treatment records contain Plaintiff's complaints of "dizziness, headache, paresthesias in her legs, and blurred vision." R. 178. ER records from November 11, 2003 report complaints of headache, chest pain with symptoms of right facial numbness, blurry vision, and tearing. R. 389. June 16, 2004 records from the ER contain complaints of severe backache, chest pain, headache with blurry vision, nausea, and bilateral upper and lower extremity numbness and weakness. R. 354. In fact, Judge Spaulding in the previous reversal identified records that referred to Plaintiff's dizziness in December 2001, and criticized the ALJ for ignoring that evidence. R. 292-93. The ALJ finding that there was no indication of blurry vision or dizziness in the records was not based on substantial evidence.

Plaintiff also contends that the ALJ should not have rejected Dr. Farrar's opinion and relied on the consultative examination report of Dr. Ranganathan – Board Certified in Internal Medicine – over the credibility of treatment records from Dr. Farrar – Board Certified in Orthopaedics – concerning Plaintiff's allegations of upper extremity weakness. R. 102, 150. Plaintiff contends that Dr. Farrar, as a Board Certified in Orthopaedist, is a specialist and better qualified than Dr.

Ranganathan to assess the impact of cervical and lumbar spine impairments on musculoskeletal functioning and the ALJ should have given more weight to Dr. Farrar's opinion than to Dr. Ranganathan's as to Plaintiff's cervical and lumbar spine impairments on her upper and lower extremities. *See, e.g., Bruet v. Barnhart*, 313 F.Supp.2d 1338, 1346 (M.D. Fla. 2004) (rheumatologists may be better qualified to determine the effects of FMS and ALJ erred by failing to properly evaluate rheumatologists' opinions).

The Commissioner argues that Dr. Ranganathan, whom the Commissioner mistakenly describes as a neurologist, is better qualified to render an opinion on neuropathy, than an orthopedist like Dr. Farrar. Beyond the fact that internal medicine and neurology are distinct specialties, this was not the basis for the ALJ's rejection on Dr. Farrar's opinion. Dr. Farrar was a specialist in the area of orthopedics, for which Plaintiff was being treated and diagnosis made, and his opinion should have been given more weight than the consulting examiner's opinion, who was not treating Plaintiff. Plaintiff also argues that the ALJ should not have attributed the less severe findings contained in the later examination results of Dr. Ranganathan (compared to the more severe prior findings of Drs. Lapp and Farrar) by concluding without any other analysis, that Plaintiff's condition had become less severe by the time Dr. Ranganathan examined her on October 31, 2001. R. 267P. There was no basis for the ALJ to conclude that Plaintiff's "condition had improved" other than Dr. Ranganathan's CE. There were no records from the treating physician that indicated any improvement, just Dr. Ranganathan's opinion of Plaintiff's condition.

Plaintiff contends that the ALJ should not have rejected Dr. Farrar's opinion because he did not support his neuropathy opinions with EMG studies. Dr. Farrar opined on August 2, 2001 that Plaintiff had a neuropathy of her right upper extremity and left lower extremity. R. 149. The ALJ

found that "Dr. Farrar's assertion of right upper and left lower extremity *neuropathy is not supported by EMG studies* and Dr. Ranganathan's examination found 5/5 motor strength in three extremities and 4/5 motor strength in the right lower extremity." R. 267O.

It was not proper for *the ALJ* (as opposed to a physician) to second guess Dr. Farrar's opinion as unsupported by EMG studies, which the ALJ opined were necessary to support the findings. Dr. Farrar's opinion was based on his performance of an orthopedic evaluation and an MRI. R. 149. The ALJ's rejection of Dr. Farrar's opinion because it was not based on EMG studies was not based on substantial evidence.

The Commissioner contends that Dr. Farrar treated Plaintiff only twice, once on June 6, 2001, and again on August 1, 2001 and, in the Commissioner's opinion (but not in the ALJ's Decision), his reported clinical findings from those examinations are "nearly indecipherable." R. 150, 155. The Court has reviewed Dr. Farrar's records and does not find them "nearly indecipherable"; they document Plaintiff's "interval history" with the response to 20 specific questions, the MRI of the lumbar spine from June 2001, and notes of the physical examination of Plaintiff's right shoulder, and recommendation of physical therapy. R. 154-55. The Commissioner also argues that Dr. Ranganathan's *single* consultative examination of Plaintiff on October 31, 2001, which was not performed for treatment of Plaintiff, or as her treating physician (R. 102), was superior to Dr. Farrar's because it was based on a "comprehensive physical examination." R. 102-05. The ALJ's decision to discount Dr. Farrar's opinion, or find that Plaintiff had "improved" was not based on substantial evidence.

Moreover, although the ALJ cited evidence that Plaintiff was treated for diabetic neuropathy in 2005, and was prescribed diabetes medication that she testified she could not afford, the ALJ did

not analysis whatsoever of the impact of diabetic neuropathy on Plaintiff's residual functional capacity; nor did the ALJ order a consultative examination to find out the level of Plaintiff's limitations from the neuropathy. While a controllable medical condition is generally not disabling, if the claimant cannot afford the treatment and can find no way to obtain it, poverty may excuse the non-compliance. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). The ALJ noted Plaintiff's intermittent compliance, but did not even mention her ability to afford treatment despite extensive testimony from Plaintiff and her husband concerning their inability to afford health coverage for her (her husband was covered by the Veterans Administration) and his employment as an independent contractor without benefits. The Emergency Room records are replete over a two- to three-year period with references to Plaintiff's need to be on diabetes medication and follow up with a primary care doctor, and her lack of compliance because she could not afford them.

### B. Dr. Dancy's chiropractic opinion

Plaintiff claims that the ALJ should not have ignored the chiropractic opinion of Dr. Dancy because the ALJ improperly characterized such opinion as not from a medical source. SSR 06-03p. The Commissioner contends that the ALJ properly discounted the opinion of the chiropractor, who is not an acceptable treating source and whose opinion was not supported by the evidence.

Plaintiff concedes that a chiropractor is considered a "medical source," but is not considered an "acceptable medical source." 20 C.F.R. §404.1513(d). Plaintiff contends that while evidence from a chiropractor is not from an "acceptable medical source," it was still relevant and material to show the severity of a claimant's impairments and how it affected Plaintiff's ability to function. See 20 C.F.R. §§404.1527(a)(2); 404.1502; and 404.1527(d). Plaintiff contends that the ALJ should not have discounted Dr. Dancy's chiropractic opinion regarding Plaintiff's ability to walk simply because the

opinion was not one from a medical source, and this may have caused the ALJ to inordinately discount the medical evidence provided by Dr. Dancy in assessing the severity of Plaintiff's impairments and the affect of her impairments on many different areas of her functioning.

The Commissioner properly contends that a chiropractor is not an acceptable medical source upon which the ALJ must rely, but is merely classified as another source of information that may be considered; the ALJ has the responsibility for assessing and determining RFC at the hearing level. *See* 20 C.F.R. §§ 416.913(d)(1) (statements from chiropractors *may* be considered by the ALJ). The ALJ's discounting of Dr. Dancy's opinion under the circumstances of this case was based on substantial evidence.

### C.     Hypothetical to VE

Plaintiff contends that the ALJ's hypothetical question to the VE failed to include all of the claimant's impairments in a limited hypothetical question to the VE. The Commissioner contends that the ALJ's hypothetical included a limitation that Plaintiff "avoid heights and dangerous machinery due to her dizziness." R. 446. The vocational expert testified that the past work of telephone solicitor could be performed despite that limitation. R. 446.

The ALJ asked the VE:

I'm going to assume that an individual who is between the ages of 48 and 52, who has the past relevant work as described for the claimant, who also has the same education. I'm going to assume that the individual can lift 10 pounds, can stand/walk for two hours in an eight hour day, can sit for six hours in an eight hour day, can only occasionally reach overhead, climb, balance, stoop, kneel, crouch or crawl and is to avoid heights and dangerous machinery due to her dizziness. Could she perform any of her past relevant work or other work?

R. 446. The ALJ omitted limitations concerning Plaintiff's nonexertional conditions of headaches, blurred vision, or chronic pain, despite evidence of these conditions in the record. Because the Court

finds that the ALJ's failure to consider specific evidence of blurry vision and diabetic neuropathy was not based on substantial evidence, exclusion of limitations from the hypothetical to the VE was also not based on substantial evidence.  Because the ALJ's decision was a based on hypothetical to the VE which did not include all of Plaintiff's limitations and was not based on substantial evidence, the Court need not reach the issue of the conflict between the DOT and the VE testimony regarding the requirements for a telephone solicitor.

## IV. CONCLUSION

For the reasons set forth above, it is respectfully **RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) and the Clerk of the Court be directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 11, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy